PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHERI L. PAGAN, | ) | CASE NO. 4:11CV00355 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| SELECT SPECIALTY HOSPITAL - | ) | |
| YOUNGSTOWN, INC., | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendant. | ) | **ORDER**  [Resolving ECF No. 29] |

Before the Court is Defendant Select Specialty Hospital - Youngstown, Inc.'s Motion for

Summary Judgment (ECF No. 29), pursuant to Rule 56(a) of the Federal Rules of Civil

Procedure.  Defendant moves the Court for summary judgment on all claims asserted against it

by Plaintiff Sheri L. Pagan in her complaint (ECF No.1-1).  Plaintiff responded in opposition

(ECF No. 30), and Defendant filed a reply (ECF No. 32).  The motion for summary judgment is

ripe for consideration.

For the reasons provided below, the Court denies Defendant Select Specialty Hospital -

Youngstown, Inc's motion for summary judgment on all claims.

**I.  Factual and Procedural Background**

**A.  Procedural Background**

Plaintiff Sheri L. Pagan ("Plaintiff") filed the instant lawsuit against Defendant Select

Specialty Hospital - Youngstown, Inc. ("Defendant") alleging two counts: (Count I) that

Defendant violated Ohio Rev. Code § 4112.02(A) by failing to provide Plaintiff with leave for

pregnancy and discharging her on account of her pregnancy and pregnancy related health

(4:11CV0355)

condition, and (Count II) that Defendant violated the Family Medical Leave Act ("FMLA") by

interfering with Plaintiff's exercise of her rights under the FMLA and retaliating against her for

exercising her rights under the FMLA.  ECF No. 1-1.  Defendant removed this action from the

Court of Common Pleas, Mahoning County, Ohio, pursuant to 42 U.S.C. § 1441(b).  ECF No. 1

at 2; ECF No. 1-4.  This Court has original jurisdiction over Count Two because the allegations

arise from the laws of the United States, specifically the FMLA, 29 U.S.C.§§ 2601-2654.  The

Court has supplemental jurisdiction over the state-law claim in Count One, an alleged violation

of Ohio Rev. Code § 4112.02(A), pursuant to 28 U.S.C. § 1367.  28 U.S.C. §1331 (2011).

Defendant filed a motion for summary judgment, arguing that Plaintiff's claims fail as a

matter of law because Defendant did not single out Plaintiff for discipline based upon her

pregnancy; Defendant did not discharge Plaintiff for either taking or requesting FMLA leave nor

did Defendant interfere with her ability to take additional FMLA leave; and Defendant had

legitimate reasons for discharging Plaintiff.  ECF No. 29-1 at 1-2.

### B.  Factual Background

Plaintiff was employed by Defendant as a Nursing Assistant at its Boardman, Ohio

location from March 10, 2008 to January 11, 2010.  ECF No. 3 at 1, ¶ 2.  Plaintiff had prior

training as a State Tested Nurse's Assistant (STNA).  ECF No. 30-2 at 7.  Defendant is a long-

term acute care hospital that provides diagnostic and medical treatment to patients with chronic

disease or complex medical conditions.  ECF No. 29-3 at 1, ¶ 2.  Defendant also has campuses in

Youngstown, Ohio (the location of its Main Campus) and Warren, Ohio.  *Id*.

Upon beginning work for Defendant, Plaintiff received a copy of Defendant's Employee

(4:11CV0355)

Handbook, which included Defendant's attendance policy. ECF No. 30-2 at 12-14. Defendant's "Attendance Guidelines" stated that "[s]even (7) or more unscheduled absences in a rolling 12 month period or 3 or more unscheduled absences in a quarter will be considered unacceptable attendance and may result in disciplinary consequences." ECF No. 29-5 at 4. Plaintiff signed an acknowledgment indicating that she understood Defendant's attendance policy. ECF No. 30-2 at 13-15; ECF No. 29-5 at 5. Compliance with the attendance policy was mandatory according to policy. ECF No. 30-1 at 25-27. Plaintiff worked full-time, three days a week, and her normally scheduled shift was from 7 pm to 7 am. ECF No. 30-2 at 16-18.

Plaintiff, and her fellow workers, were originally notified of their schedule six weeks in advance and then, after a change in administration, workers became notified of their schedule two to three weeks ahead of time. *Id*. at 18-19. Plaintiff has acknowledged that she did not have any problem understanding when she was scheduled to work. *Id*. at 19.

Defendant's Employee Handbook states that disciplinary situations "will generally be dealt with through the progressive discipline process" in which a verbal warning is issued "when a performance problem(s) is initially identified," a written warning is issued "if there is a second occurrence of the same issue or continued lack of improvement," and termination may occur if "adequate improvement does not occur or there are repeated instances of the behavior." ECF No. 29-7 at 8. On July 7, 2009, Plaintiff engaged in a loud outburst in the presence of her coworkers, which was also observed by the family members of a patient. ECF No. 29-3 at 22. Plaintiff received a written warning for her behavior, and she signed a disciplinary action form which contained the statement that any further policy violations "and/or failure to comply with

3

(4:11CV0355)

corrective action may result in disciplinary actions up to and including termination." *Id*.

Defendant's Employee Handbook states that "FMLA leave is limited to a total of 12 weeks in a rolling 12-month period" and that it may be used in the case of "a serious health condition that makes the employee unable to perform the functions of the employee's job." ECF No. 29-7 at 7-9.  On August 5, 2009, Plaintiff requested FMLA leave due to her own serious health condition.  *Id*. at 1.  Plaintiff's request was granted and she took approved FMLA leave from August 5, 2009 to August 19, 2009.  ECF No. 29-3 at 22.  On August 20, 2009, Plaintiff returned to work without any medical restrictions.  *Id*.  However, Plaintiff claims that, after returning to work, she continued to have additional problems related to her FMLA-approved health condition from August 2009.  ECF No. 30-2 at 55.  Plaintiff also alleges that she inquired about taking and requested additional FMLA leave, but was incorrectly told by her supervisor, Jodi Costello, that she had no more leave available.  *Id*. at 54-55.

In December 2009, Plaintiff discovered that she was pregnant through a home test on the 12th or 13th of December.  She had the pregnancy confirmed by a doctor on December 28, 2009. *Id*. at 46.  Plaintiff informed her supervisor, Ms. Costello, of the pregnancy on January 7, 2010. *Id*. at 45-46.  Plaintiff became upset by the reactions of Ms. Costello and Hospital CEO Sharon Norro toward the news of Plaintiff's pregnancy; specifically, Plaintiff was unsettled by what she felt were a series of inappropriate questions put to her by Ms. Costello.  *Id*. at 40-41.  Prior to Defendant's termination of Plaintiff's employment, Ms. Costello, Ms. Norro and Ms. Eorio were all aware of Plaintiff's pregnancy.  ECF No. 30-6 at 4.

In her job as Human Relations Coordinator, Ms. Eorio reviewed the 2009 attendance

4

4:11CV00355

statistics for sixteen nurses and nursing assistants employed by Defendant, documented these statistics on Attendance Controllers, and provided the Attendance Controllers to Ms. Costello for review on January 4, 2010. ECF No. 29-3 at 2. Ms. Eorio's review revealed that twelve of the sixteen nurses and nursing assistants had violated Defendant's attendance policy, and all twelve of the employees had been disciplined between January 6, 2010 and January 29, 2010 for the violations. *Id*. On January 11, 2010, Ms. Eorio and Ms. Costello met with Plaintiff and informed her that, because she had violated Defendant's attendance policy and due to her having received a prior written warning for disruptive behavior, Plaintiff's employment with Defendant was being terminated. *Id*. at 2.

Plaintiff had three unscheduled absences in the first quarter of 2009, a total of seven unscheduled absences from January 2009 through September 1, 2009, and three additional unscheduled absences in October and December of 2009. ECF No. 30-3 at 60-61. Plaintiff was the only nurse or nursing assistant whose employment was terminated in January 2010 for attendance violations. ECF No. 29-3 at 3.

## II. Legal Standard

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the

5

4:11CV00355

pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant."  *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact.  *Id.* at 248.  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict.  *Id.*  Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  To withstand summary

6

4:11CV00355

judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily will not be sufficient to defeat a motion for summary judgment. *Id.*

### III.  Analysis

#### A.  Count I: Violation of Ohio Rev. Code § 4112.02(A)

Under the Ohio Revised Code, it is an unlawful discriminatory practice for "any employer, because of the race, color, religion, [or] sex . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to . . . any matter directly or indirectly related to employment." Ohio Rev. Code § 4112.02(A) (2012). Under § 4112.02(A), "the terms 'because of sex' and 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, any illness arising out of and occurring during the course of a pregnancy, childbirth, or related medical conditions." Ohio Rev. Code § 4112.01(B) (2012). In her complaint, Plaintiff claims that Defendant violated § 4112.02(A) by "failing to provide Plaintiff with leave for her pregnancy and discharging her on account of her pregnancy and pregnancy related health condition." ECF No. 1-1 at 2, ¶ 9.

The parties dispute the proper test for establishing a *prima facie* case of pregnancy discrimination under Ohio Rev. Code § 4112.02(A). Defendant argues that, under *Hollingworth v. Time Warner Cable*, 157 Ohio App.3d 539 (2004), Plaintiff must demonstrate "(1) that she was pregnant, (2) that she was discharged, and (3) that a non-pregnant employee similar in ability or inability to work was treated differently." ECF No. 29-1 at 7; *Hollingworth*, 157 Ohio App.3d

7

4:11CV00355

at ¶ 21.  Meanwhile, Plaintiff argues that, under *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, (6th Cir. 2000), she must establish that "1) she was pregnant; 2) she was qualified for her job; 3) she was subjected to an adverse employment decision; and 4) there is a nexus between her pregnancy and the adverse employment decision."  ECF No. 30 at 7-8; *Cline*, 206 F.3d at 658.

Defendant claims that *Cline* discusses sex discrimination under Title VII and does not state the proper test for pregnancy discrimination under Ohio Rev. Code § 4112.02.  ECF No. 32 at 2.  However, the Supreme Court of Ohio has held that "[F]ederal case law interpreting Title VII . . . is generally applicable to cases involving alleged violations of R.C. § 4112."  *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm.'n*, 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (1981).  Because the Sixth Circuit Court of Appeals has followed the test outlined in *Cline* when deciding cases of pregnancy discrimination under Ohio Rev. Code § 4112.02, the Court will be apply that test.[1]  *See Boyd v. Harding Academy*, 88 F.3d 410, 413 (6th Cir. 1996), *Cline*, 206 F.3d at 658; *Tysinger v. Police Dept. of City*, 463 F.3d 569, 573 (6th Cir. 2006); *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 631 (6th Cir. 2008).

When a Plaintiff's claims are not premised on direct evidence of pregnancy discrimination, such as in this case, the Plaintiff's claims are analyzed under the tripartite burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Tysinger*, 463 F.3d at 572-573.  Under the *McDonnell Douglas* framework, a Plaintiff must first

---

[1]  A third test to establish a *prima facie* case of pregnancy discrimination under Ohio Rev. Code § 4112.02(A) has also been used by lower courts in this Circuit.  Under this third test, a Plaintiff must establish that she (1) was pregnant, (2) was discharged, and (3) was replaced by a nonpregnant person.  *See Marvel Consultants v. Ohio Civil Rights Comm'n*, 639 N.E.2d 1265, 1267 (Ohio App. 8 Dist. 1994).

4:11CV00355

establish a *prima facie* case of discrimination.  <u>Id. at 573</u>.  If a Plaintiff satisfies this burden, "the burden of production shifts to the defendant employer to articulate a legitimate nondiscriminatory reason for its actions."  <u>Id. at 576</u>.  If a defendant articulates such a reason, it is then "incumbent on the plaintiff to rebut the articulated reason by showing that it is not credible and is a mere pretext for discrimination.  <u>Id.</u>  The U.S. Supreme Court has recognized that "although the plaintiff always retains the burden of proving intentional discrimination, evidence of the falsity of the employer's explanation, coupled with the elements of the plaintiff's *prima facie* case, could possibly, even without additional evidence of discrimination, justify an inference of discrimination."  <u>Id.</u> (citing <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 147-148 (2000)).

In order to establish a *prima facie* case of pregnancy discrimination under <u>Ohio Rev. Code § 4112.02(A)</u>, Plaintiff must demonstrate that "1) she was pregnant; 2) she was qualified for her job; 3) she was subjected to an adverse employment decision; and 4) there is a nexus between her pregnancy and the adverse employment decision."  <u>Cline</u>, 206 F.3d at 658.  Defendant does not dispute the fulfilment of elements one and three.  <u>ECF No. 29-1</u>; <u>ECF No. 32.</u>  Defendant does not, however, address element two, that Plaintiff was qualified for her job.  In determining whether a Plaintiff was qualified for their job, this Circuit has held that "a plaintiff's qualifications are to be assessed in terms of whether he or she was meeting the employer's expectations prior to and independent of the events that led to the adverse action."  <u>Tysinger</u>, 463 F.3d at 573.  As pointed out by Plaintiff, there is extensive evidence that, not only was Plaintiff qualified for her job, she met Defendant's expectations prior to and independent of

4:11CV00355

the events that led to her discharge.  ECF No. 30 at 8.  According to Plaintiff's supervisor, Ms. Costello, Plaintiff received a positive evaluation for her initial Interview Assessment, successfully completed her probationary period, met expectations for her annual performance review, and received a raise for her work performance.  ECF No. 30-3 at 13-21.  Thus, the Court finds Plaintiff was qualified for her job and fulfills the second element of a *prima facie* case of pregnancy discrimination.

Defendant disputes the fulfilment of the final element of Plaintiff's *prima facie* case, that there exists a nexus between Plaintiff's pregnancy and her discharge by Defendant.  Defendant claims that Plaintiff cannot establish this nexus because she was not treated worse than a similarly-situated, non-pregnant employee.  ECF No. 29-1 at 8.  However, Plaintiff claims that such a nexus can be established because of the temporal proximity between her pregnancy announcement and her discharge; the negative reaction of management to the announcement; Defendant's failure to follow its progressive discipline policy; and because she was treated worse than a similarly-situated, non-pregnant employee.  ECF No. 30 at 8-9.

In evaluating a discrimination claim, the Sixth is Circuit has required that a Plaintiff establish, at a minimum, that she (1) "was a member of a protected class" and (2) "that for the same or similar conduct [she] was treated differently than similarly-situated non-minority [or, in this case, non-pregnant] employees." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-583 (6th Cir.1992).  By virtue of her pregnancy, Plaintiff was a member of a protected class under Ohio Rev. Code § 4112.02(A).  *See* Ohio Rev. Code § 4112.01(B) (2012).  In determining whether Plaintiff and a non-pregnant employee are "similarly-situated," the Court may examine whether

10

4:11CV00355

the two "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell,* 964 F.2d at 583. Importantly, in order for two employees to be deemed "similarly-situated," a plaintiff "need not demonstrate an exact correlation with the employee receiving more favorable treatment," but instead, the two employees "must be similar in 'all of the *relevant* aspects.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

Plaintiff claims that she was treated less favorably than her former co-worker Amber Goodwin. ECF No. 30-2 at 68-70. Plaintiff claims that she and Ms. Goodwin were similarly-situated because they had the same supervisor, were subject to the same standards, and Plaintiff alleges that Ms. Goodwin's violations of Defendant's attendance policy were equivalent to Pagan's single prior incidence of discipline. ECF No. 30 at 11. Defendant counters that the two were not similarly-situated since Ms. Goodwin was not at the same step of the disciplinary process as Plaintiff in January 2010. ECF No. 29-1 at 9. Taking into account the Sixth Circuit's reasoning that the two employees need only be similar in all of the relevant aspects of their work situation, the Court finds that Ms. Goodwin and Plaintiff are comparable subjects.

Plaintiff and Ms. Goodwin both violated Defendant's attendance policy by having more than three unscheduled absences in a single quarter and more than seven unscheduled absences in a rolling twelve month period. ECF No. 29-3 at 5, 10. Defendant's Employee Handbook states that disciplinary situations are generally to be handled through a "progressive discipline process" in which a verbal warning is issued "when a performance problem(s) is initially identified," a

11

4:11CV00355

written warning is issued "if there is a second occurrence of the same issue or continued lack of improvement," and termination may occur if "adequate improvement does not occur or there are repeated instances of the behavior." ECF No. 29-7 at 8.  Ms. Goodwin received a verbal warning in July 2009, then a written warning in January 2010 after another attendance violation, and was dismissed in May 2010 after an additional violation of the attendance policy.  ECF No. 29-3 at 3. Unlike Goodwin, Plaintiff was discharged without receiving either a verbal or written warning about her attendance violation, although she had received a prior written warning for a different type of workplace violation.  Id. at 22-23.  Such disparate treatment between Plaintiff and Ms. Goodman, and the failure of Defendant to follow its progressive discipline policy in the case of Plaintiff, are two factors that could persuade a jury to find a nexus between Plaintiff's pregnancy and her discharge by Defendant.

In attempting to establish a nexus between Plaintiff's pregnancy and her discharge by Defendant, Plaintiff relies upon factors in addition to the disciplinary treatment of Plaintiff and Ms. Goodman.  Plaintiff cites the close proximity in time between the announcement of her pregnancy on January 7, 2010 and her discharge by Defendant, four days later, on January 11, 2010.  ECF No. 30 at 8-9.  Additionally, Plaintiff cites the negative reaction of both her supervisor and Defendant's CEO to the announcement of Plaintiff's pregnancy as supporting a causal connection between Plaintiff's pregnancy and her discharge.  Id. at 9.  Viewed as a whole and in the light most favorable to Plaintiff, the disparate treatment between Plaintiff and a similarly-situated, non-pregnant employee for attendance violations, the failure of Defendant to follow its progressive disciplinary policy in regard to the discipline of Plaintiff, the close

12

4:11CV00355

proximity in time between the announcement of Plaintiff's pregnancy and her discharge, and the negative reaction of Plaintiff's supervisors to the announcement are sufficient, at the summary judgment stage, to establish a nexus between Plaintiff's pregnancy and her discharge by Defendant, and thus establish a *prima facie* case of pregnancy discrimination.

Once a Plaintiff establishes a *prima facie* case of discrimination, "the burden of production shifts to the defendant employer to articulate a legitimate nondiscriminatory reason for its actions." *Tysinger*, 463 F.3d at 576. Defendant claims that it had a legitimate nondiscriminatory reason for discharging Plaintiff– the enforcement of its attendance policy. ECF No. 29-1 at 10. Of the twelve employees who received discipline for violating Defendant's attendance policy, Defendant claims that Plaintiff was the only one discharged because she was the only employee with a prior written warning in her file and it was the practice of Defendant to discharge employees who are subject to further discipline after having already received a written warning. *Id*. Defendant also claims that it does not discipline its employees for taking pregnancy leave as evidenced by the fact that three of its employees took pregnancy leave in 2009 and 2010 without receiving any discipline. *Id*. These claims of Defendant are sufficient to establish a legitimate nondiscriminatory reason for Plaintiff's discharge under the *McDonnell Douglas* framework.

If a defendant articulates a legitimate, nondiscriminatory reason for the discharge, it is then "incumbent on the plaintiff to rebut the articulated reason by showing that it is not credible and is a mere pretext for discrimination." *Tysinger*, 463 F.3d at 576. The Sixth Circuit has held that a plaintiff can demonstrate pretext, *i.e.*, rebut the legitimate and non-discriminatory reason

4:11CV00355

articulated by her employer "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).  In this case, Plaintiff argues that the proffered reason did not actually motivate and was insufficient to warrant the defendant's challenged conduct.  Plaintiff claims that her violation of the attendance guidelines was insufficient to warrant her discharge under Defendant's progressive discipline policy.  ECF No. 30 at 11.  Plaintiff urges that termination, under Defendant's progressive discipline policy, is normally warranted when an employee has already received verbal and written warnings, and "adequate improvement does not occur or there are repeated instances of the behavior." *Id.* at 11 (citing ECF No. 29-7 at 8).  Plaintiff argues that, she never repeated the misconduct that she had previously been disciplined for and she never received a verbal or written warning in regard to her attendance violations before being discharged.  *Id.* at 11-12.  Thus, Plaintiff argues that Defendant's proffered reason for her discharge, the enforcement of its attendance guidelines, was insufficient to warrant the discipline.

Plaintiff also offers the failure of Defendant to consistently enforce its attendance guidelines as evidence of pretext.  Both Plaintiff and her former co-worker, Amber Goodwin, violated Defendant's attendance guidelines by having three or more unscheduled absences in the first quarter of 2009 and seven or more unscheduled absences in a rolling twelve-month period.  ECF No. 30-1 at 26-27, 44-45.  While Defendant's Human Resources Coordinator, Cindy Eorio, acknowledged that it was her job to enforce the mandatory attendance guidelines, but she could not explain why she did not discipline Plaintiff after she violated the guidelines in the first

14

4:11CV00355

quarter of 2009 or after Plaintiff violated the guidelines again in September 2009 by having a

seventh unscheduled absence in a rolling twelve-month period.  *Id*. at 26-27.  Similarly, Ms.

Goodwin violated Defendant's attendance guidelines by having three unscheduled absences in the

first quarter of 2009, five unscheduled absences in the second quarter of 2009, and thus, by July

2009, more than seven unscheduled absences in a rolling twelve-month period.  *Id*. at 44-45.

Had Defendant's mandatory attendance guidelines had been enforced in a consistent manner, Ms.

Goodwin would have received a verbal warning in March 2009, a written warning in June 2009,

and been discharged in July 2009.[2]  *Id*. at 45-46.  This, however, did not occur and Defendant did

not discipline Ms. Goodwin in accordance with their mandatory attendance guidelines.  *Id*. at

45-48.  Thus, Plaintiff argues that the inconsistent enforcement of Defendant's attendance

guidelines serves as evidence that Defendant's proffered reason for her discharge, violation of the

mandatory attendance policy, was pretext.

Additionally, Plaintiff argues that Defendant's proffered reason for her discharge did not

actually motivate the Defendant's challenged conduct since the supervisors of Plaintiff cannot

recall who decided to impose discipline or when the decision to do so was made.  ECF No. 30 at

12.  Ms. Eorio was unable to recall whether she discovered Plaintiff's attendance violations prior

to Plaintiff's announcement of her pregnancy on January 7, 2010 or whether the decision to

discharge Plaintiff was made after that announcement.  *Id*. at 32-34.  Likewise, Ms. Costello, the

other administrator who was present when Plaintiff was discharged, could not recall when she

---

[2]As earlier noted, Goodwin was not terminated until May 2010, after additional
violations of the attendance policy.

4:11CV00355

began discussions with Ms. Eorio or Corporate Headquarters regarding either Plaintiff's attendance violations or the discipline that Plaintiff was to receive.  ECF No. 30-3 at 64. However, Defendant admits that Ms. Eorio, Ms. Costello, and hospital CEO Ms. Noro were all aware of Plaintiff's pregnancy prior to her discharge.  ECF No. 30-6 at 4.  Thus, Plaintiff alleges the fact that Defendant's employees cannot recall whether they decided to discharge Plaintiff prior to the announcement of her pregnancy presents evidence that her pregnancy was a motivating factor, if not the determinant factor, in her discharge.  The Court finds that this evidence, along with Defendant's inconsistent enforcement of its attendance policy and failure to follow its progressive discipline policy in the case of Plaintiff, present genuine issues of material fact as to whether Defendant's proffered reason for Plaintiff's discharge was pretext.

**B.  Count II: Violation of Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*.**

The Family Medical Leave Act provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" because of "the birth of a son or daughter of the employee and in order to care for such son or daughter" or "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(A), (D) (2009).  Defendant's Employee Handbook recognizes the right of its employees to take FMLA leave.  ECF No. 29-7 at 7-8.  The Code of Federal Regulations states that "an employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the [FMLA]."  29 C.F.R. § 825.220(a)(1) (2009).  Plaintiff alleges claims against Defendant of interference and retaliation under the FMLA.  ECF No. 1-1 at 3, ¶ 19.  The Sixth Circuit recognizes both theories of

16

4:11CV00355

wrongdoing. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). The "retaliation" theory, under 29 U.S.C. § 2615(a)(2), prohibits an employer from "discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220 (2009). Meanwhile, the "interference" theory, under 29 U.S.C. § 2615(a)(1), makes it "unlawful for employers to interfere with or deny an employee's exercise of her FMLA rights." *Bryson*, 498 F.3d at 570.

### 1. FMLA Retaliation

A Plaintiff alleging that she has been retaliated against by her employer or former employer for exercising her rights under the FMLA "must produce either direct or indirect evidence of retaliation." *Thompson v. Chase Bankcard Services, Inc*, 737 F.Supp.2d 860, 870 (S.D. Ohio 2010). In this case, Plaintiff does not offer direct evidence in support of her claim. ECF No. 30 at 13. When an FMLA case relies only upon indirect evidence, the Court applies the *McDonnell Douglas* tripartite burden-shifting framework. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 315 (6th Cir. 2001). As explained earlier, under *McDonnell Douglas*, the Plaintiff "must first prove a *prima facie* case of discrimination." *Id.* The burden then shifts to the Defendant to "articulate a legitimate, nondiscriminatory reason for [the Plaintiff]'s discharge." *Id.* If the Defendant articulates such a reason, the Plaintiff then "has the burden of showing that the articulated reason is in reality a pretext to mask discrimination." *Id.*

In order to establish a *prima facie* case of FMLA retaliation, the Plaintiff must show that (1) she "availed [herself] of a protected right under the FMLA," (2) she "was adversely affected by an employment decision," and (3) there exists "a causal connection between [her] exercise of

17

4:11CV00355

a right under the FMLA and the adverse employment decision." *Id*. at 314.  In establishing a

*prima facie* case of FMLA retaliation, the burden of the Plaintiff "is not intended to be an

onerous one." *Id*. at 315.  It is only a "low threshold showing that a FMLA plaintiff must make

to survive the *prima facie* stage of proof." *Bryson*, 498 F.3d at 571.

Defendant does not dispute Plaintiff's claim that she was adversely affected by an

employment decision when she was discharged from her employment with Defendant; however,

Defendant does challenge whether Plaintiff has shown that she availed herself of a protected right

under the FMLA and, if she did so, whether there exists a causal connection between her exercise

of such a right and her discharge from employment.  Defendant claims that Plaintiff's alleged

inquiry in November 2009, about whether she had additional medical leave available, and her

discharge in January 2010 does not constitute a retaliation claim since Plaintiff did not request

FMLA leave for any of the unscheduled absences she had in September, October or December

2009.  ECF No. 29-1 at 12.  However, Plaintiff claims that she did request FMLA leave at the

time that she made the inquiry about whether she had additional leave available.  ECF No. 30-2

at 54 – 55.  This discrepancy in the accounts of the parties about whether Plaintiff requested

FMLA leave in November 2009 presents a genuine issue of material fact which must be resolved

by a jury.  Additionally, the Sixth Circuit has held that the "right to actually take twelve weeks of

leave pursuant to the FMLA includes the right to declare an intention to take such leave in the

future." *Skrjanc*, 272 F.3d at 314 (referring to 29 U.S.C. § 2612(e)).  Thus, Plaintiff's inquiry

alone about whether she had additional leave available could be seen by a reasonable juror as a

declaration of an intention to take additional FMLA leave in the future and therefore meets the

4:11CV00355

burden for the first element of a retaliation *prima facie* case.

Plaintiff, having shown that she availed herself of a protected right under the FMLA and was adversely affected by an employment decision, must then establish a causal connection between her exercise of such a right and the employment decision. Defendant claims that Plaintiff's sole type of evidence in this regard, temporal proximity, has been held by this Circuit to be typically insufficient to establish causation when presented alone. The case upon which Defendant relies for this proposition, *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000), held that temporal proximity alone "was not particularly compelling" in that instance, but that "there may be circumstances where evidence of temporal proximity alone would be sufficient to support" a causal connection. *Id.* at 567. In fact, the Sixth Circuit has found temporal proximity alone to be sufficient to establish a causal connection in certain circumstances. *See Bryson*, 498 F.3d at 571; *Thompson*, 737 F.Supp.2d at 872. An additional case cited by Defendant failed to find causation through temporal proximity in itself and determined that "a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." *Randolph v. Ohio Dep't of Youth Services*, 453 F.3d 724, 737 (6th Cir. 2006).

In the instant case, Plaintiff claims that the two months between her alleged November 2009 inquiry about whether she had additional FMLA leave available (and was incorrectly told that she did not) and her discharge by the Defendant on January 11, 2010 (four days after she had announced her pregnancy to management, and, thereby, implied that she would need additional leave in the future) constitutes sufficient temporal proximity to establish a causal connection of

4:11CV00355

retaliation.  ECF No. 30 at 15.  Plaintiff alleges that, in November 2009, she inquired about the existence of additional FMLA leave available to her and requested additional leave at that time. ECF No. 29-14 at 6; ECF No. 30-2 at 62.  Two months later, Plaintiff announced her pregnancy to Defendant's management.   ECF No. 30-2 at 45-46.  Plaintiff acknowledges that she did not request any FMLA leave when she announced her pregnancy or after the announcement. Plaintiff did, however, consider her pregnancy announcement to be a declaration that she would need additional FMLA leave after giving birth.  *Id.* at 50-52, 73-74.  As the Sixth Circuit stated in *Palmer*, a "Plaintiff's protected activity is not only her use of FMLA leave, but also her *requests* for that leave." *Palmer*, 737 F.Supp.2d at 872.  In this case, Plaintiff acknowledges that she was not terminated because of the FMLA leave that she actually took in August 2009, but claims she was discharged because of additional leave that she allegedly requested and inquired about taking, in addition to pregnancy leave that she intended to take in the future.  ECF No. 30-2 at 53-55, 60-66.  Given the low threshold showing that a plaintiff alleging FMLA retaliation must meet in order to survive the *prima facie* stage of proof, the Court finds that the temporal proximity between Plaintiff's inquiry about, and request for, additional FMLA leave in November 2009 and her discharge by Defendant in January 2010, along with the fact that Plaintiff was discharged just four days after she announced her pregnancy to management (thereby implying that she would require additional leave in the future) is sufficient to establish a causal connection between Plaintiff's exercise of a right under the FMLA and her discharge.

Because the Plaintiff has established a *prima facie* case of FMLA discrimination, "the burden of production [now] shifts to the defendant employer to articulate a legitimate

4:11CV00355

nondiscriminatory reason for its actions." *Tysinger*, 463 F.3d at 576.  As in Count One,

Defendant claims that it had a legitimate nondiscriminatory reason for discharging Plaintiff,

which was the enforcement of its attendance policy.  ECF No. 29-1 at 10.  Defendant claims that,

of the twelve employees who received discipline for violating Defendant's attendance policy,

Plaintiff was the only one discharged because she was the only employee with a prior written

warning in her file and it was the practice of Defendant to discharge employees who are subject

to further discipline after having already received a written warning.  *Id*.  Defendant also claims

that it does not discipline its employees for taking FMLA leave as evidenced by the fact that

twenty-six of its employees requested and received FMLA leave in 2009 and 2010 without

receiving any discipline.  ECF No. 29-3 at 3.  These claims of Defendant are sufficient to

establish a legitimate nondiscriminatory reason for Plaintiff's discharge under the second part of

the *McDonnell Douglas* framework.

      Given that Defendant has articulated a legitimate, nondiscriminatory reason for the

discharge, it is now "incumbent on the plaintiff to rebut the articulated reason by showing that it

is not credible and is a mere pretext for discrimination." *Tysinger*, 463 F.3d at 576.  The Sixth

Circuit has held that a plaintiff can demonstrate pretext, *i.e.*, rebut the legitimate and

non-discriminatory reason articulated by her employer "by showing that the proffered reason (1)

has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was

insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021

(6th Cir. 2000).  As in the analysis regarding Defendant's alleged violation of Ohio Rev. Code §

4112.02(A), Plaintiff argues that the proffered reason did not actually motivate Defendant's

21

4:11CV00355

conduct and was insufficient to warrant Defendant's challenged conduct.  As evidence that

Defendant's proffered reason for her discharge was pretextual, Plaintiff, again, relies upon the

failure of Defendant to follow its progressive discipline policy when disciplining Plaintiff for her

attendance violations, the inconsistent manner in which Defendant enforced its attendance

guidelines, and the inability of Plaintiff's supervisors to recall whether they decided to discharge

before or after learning of her pregnancy.  ECF No. 30 at 11-13.

Defendant claims that Plaintiff does not offer a motive in regard to Defendant's alleged

violation under the FMLA for retaliation.  As Defendant points out, "the employer's motive is an

integral part of the analysis" in retaliation claims.  *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508

(6th Cir. 2006) (emphasis omitted).  Despite Defendant's protestations to the contrary, Plaintiff

does offer a motive for retaliation.  Plaintiff claims that she inquired in November 2009 about

whether she had additional FMLA leave available, requested leave at that time, and considered

her pregnancy announcement in January 2010 to be an indication to management that she would

need more FMLA leave after giving birth.  ECF No. 30-2 at 70-74.  These circumstances, in

addition to the evidence for pretext analyzed in regard to the alleged violation of Ohio Rev. Code

§ 4112.02(A), are sufficient for a reasonable juror to conclude that Defendant, aware of

Plaintiff's requests for and use of FMLA leave in the past, decided to discharge Plaintiff when it

became aware that she was pregnant and would request additional FMLA leave in order to give

birth and care for her newborn child.  Accordingly, there exist genuine issues of material fact in

regard to whether Defendant's proffered reason for Plaintiff's discharge was pretextual.

4:11CV00355

### 2.  FMLA Interference

In order to establish a *prima facie* case of FMLA interference, Plaintiff must show that (1) she "was an eligible employee," (2) the "defendant was a covered employer," (3) she "was entitled to leave under the FMLA," (4) she "gave defendant notice of [her] intent to take leave," and (5) "the defendant denied [her] FMLA benefits or interfered with FMLA rights to which [she] was entitled." *Harris v. Metro. Gov't of Nashville & Davidson County*, 594 F.3d 476, 482 (6th Cir. 2010).  Defendant does not dispute that Plaintiff was an eligible employee or that Defendant was a covered employer; rather, Defendant challenges whether Plaintiff was entitled to FMLA leave after she returned from her prior approved leave on August 20, 2009, whether Plaintiff properly notified Defendant of her intent to take additional FMLA leave at this time, and whether Defendant interfered with the FMLA rights to which Plaintiff was entitled.  ECF No. 29-1 at 13-17.  Additionally, Defendant claims that the FMLA is not a strict-liability statute, and as such, Plaintiff is not entitled to any relief if she would have been dismissed regardless of her request for FMLA leave.  *Id*. at 13.

Defendant claims that Plaintiff has not shown that she was entitled to FMLA leave after August 20, 2009, the date that she returned from her prior, approved FMLA leave.  Defendant points out that Plaintiff did not produce any doctor's notes or other evidence tying her unscheduled absences in September, October and December 2009 to her prior serious health condition.  *Id*. at 14.  Defendant also suggests that Plaintiff's absences in December were tied to her pregnancy, not her prior FMLA-approved condition, and therefore would not be covered under FMLA leave for a serious health condition.  *Id*.  However, central to Plaintiff's claim of

23

4:11CV00355

FMLA interference is Plaintiff's allegation that, after returning from approved leave, she asked her supervisor whether she had additional FMLA leave available and was incorrectly told that she did not. ECF No. 29-3 at 54-55. A reasonable juror, therefore, would not expect Plaintiff, having been told that she did not have any additional leave available, to ask her physician to produce documentation that would qualify her for such leave.

Under the FMLA, and Defendant's Employee Handbook, Plaintiff was entitled to twelve weeks of leave for a qualifying serious health condition. 29 U.S.C. § 2612(a)(1)(D) (2009); ECF No. 29-7 at 7-9. Plaintiff had already been granted two weeks leave in August 2009 for an FMLA-qualifying condition and it is not unreasonable to assume that health problems related to this prior approved condition, which Plaintiff claims some of her later absences resulted from, would also qualify under the FMLA. ECF No. 29-3 at 1-2. Defendant suggests that Plaintiff's unscheduled absences in December may have been the result of pregnancy, instead of related to the Plaintiff's prior, FMLA-approved condition. The Sixth Circuit has held that the "FMLA's implementing regulations specifically cite pregnancy as an example of a 'serious health condition' that warrants intermittent leave, noting that such a leave ordinarily would encompass 'prenatal examinations' and the employee's 'own condition, such as for periods of severe morning sickness.'" McClain v. Detroit Entm't, L.L.C., 458 F.Supp.2d 427, 434 (E.D. Mich. 2006) (quoting 29 C.F.R. § 825.203(c)(1)). On December 28, 2009, the same day that her pregnancy was confirmed by her doctor, Plaintiff called off sick from work due to vomiting, presumably the result of morning sickness. ECF No. 30-2 at 56. Thus, a reasonable juror could find that Plaintiff was entitled to leave under the FMLA for at least some of her unscheduled

4:11CV00355

absences after August 20, 2009.

Defendant claims that Plaintiff did not properly notify Defendant of her intent to take additional medical leave after she returned from her approved, FMLA-leave on August 20, 2009. Focusing on the FMLA notice requirements, Defendant points out that it is the duty of the employee "to place the employer on notice of a probable basis for FMLA leave." ECF No. 29-1 at 15 (citing *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004)). Defendant claims that Plaintiff never informed Defendant that she needed leave for absences occuring after August 20, 2009. *Id.* at 16. However, Plaintiff claims that she did request FMLA leave at the time that she made an inquiry, in November 2009, about whether she had additional leave available. ECF No. 30-2 at 54 – 55. This discrepancy in the accounts of Plaintiff and Defendant regarding whether Plaintiff did actually request FMLA leave in November 2009 presents a genuine issue of material fact to be resolved by a jury. Construing all reasonable inferences in favor of the Plaintiff, her inquiry about additional medical leave, and alleged request for leave, in November 2009, presented sufficient notice to the Defendant of her intent to take FMLA leave.

Defendant argues that Plaintiff does not have a valid claim for FMLA interference because her discharge would have occurred regardless of her request for or taking of FMLA leave since she still would have violated Defendant's attendance policy even if three of the four disputed absences had been covered by FMLA leave. ECF No. at 29-1 at 17. Defendant claims that such a violation, along with Plaintiff's prior written warning for her workplace behavior, would have resulted in Plaintiff's discharge regardless of any requests for additional leave. *Id*. Defendant

25

4:11CV00355

also claims that Plaintiff's access to Defendant's Employee Handbook and other materials, which stated that an eligible employee had twelve weeks of leave available for an FMLA-qualifying condition, made it unreasonable for Plaintiff to rely on the alleged misstatement by Ms. Costello that Plaintiff had no additional leave available. ECF No. 32 at 8-9.

Defendant's arguments obscure the fifth element of Plaintiff's *prima facie* case for FMLA interference: that "the Defendant denied [Plaintiff's] FMLA benefits or interfered with FMLA rights to which [she] was entitled." *Harris*, 594 F.3d at 482. Plaintiff claims that, in November 2009, when she asked her supervisor, Ms. Costello, whether she had additional FMLA leave available and requested such leave, Ms. Costello incorrectly told Plaintiff that she did not have any more leave available. ECF 30-2 at 54-55. A reasonable juror is likely to find these actions of Ms. Costello as "discouraging an employee from using [FMLA] leave" and, thereby, "'[i]nterfering with' the exercise of an employee's rights" under the FMLA. 29 C.F.R. § 825.220(b) (2009). Therefore, Plaintiff fulfills the final element of, and can establish, a *prima facie* case of FMLA interference.

Construing all reasonable inferences in favor of Plaintiff as the non-moving party, the Court finds that Plaintiff is able to establish a *prima facie* case of pregnancy discrimination under Ohio Rev. Code § 4112.02(A), as well as *prima facie* cases for retaliation and interference under the Family Medical Leave Act. Although Defendant has articulated a legitimate, nondiscriminatory reason for the discharge of Plaintiff under both counts, genuine issues of material fact exist in regard to whether Defendant's proffered reason is pretext. Since a reasonable jury could find for Plaintiff, summary judgment is not proper and shall not be granted.

4:11CV00355

### IV.  Conclusion

For the reasons stated above, the Court denies Defendant's motion for summary judgment

on both counts.


IT IS SO ORDERED.


 June 18, 2012                                       /s/ Benita Y. Pearson                
Date                                                Benita Y. Pearson
                                                    United States District Judge